# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

No. 15-1217C & No. 16-1181C
**CONSOLIDATED**
(Filed: November 6, 2017)*
**\*Opinion originally filed under seal on October 30, 2017**

| | |
|---|---|
| STRAUGHAN ENVIRONMENTAL, INC., | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) )   Post-Award Bid Protest; Small Business Set Aside; Joint Venture, |
| THE UNITED STATES, | )   Mentor-Protégé Agreements, 13 )   C.F.R. § 124.520; Standing of Adverse |
| Defendant, | )   Party, 13 C.F.R. § 134.302(a); )   Injunctive Relief |
| and | ) ) |
| INTEGRATED MISSION SUPPORT SERVICES, LLC, | ) ) ) |
| Defendant-Intervenor. | ) ) |

*Sharon A. Roach*, Falls Church, VA, for plaintiff. *Rosanne E. Stafiej*, *Kathy C. Potter*, and *John M. Murdock*, Falls Church, VA, of counsel.

*Russell J. Upton*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were *Chad Readler*, Acting Assistant Attorney General, *Robert E. Kirschman Jr.*, Director, *Douglas K. Mickle*, Assistant Director, and *Deborah A. Bynum*, Assistant Director, for defendant. *Alexander T. Bakos*, Office of General Counsel, National Aeronautics & Space Administration, Washington, D.C., *Alex Vinson*, Office of Chief Counsel, John F. Kennedy Space Center, National Aeronautics & Space Administration, Kennedy Space Center, FL, and *Sabrina C. Daly*, Office of Litigation, Office of General Counsel, Small Business Administration, Washington, D.C., of counsel.

*Richard J.R. Raleigh, Jr.*, Huntsville, AL, for defendant-intervenor.  *Jerome S. Gabig, Jr.*, Huntsville, AL, of counsel.

## OPINION ON CROSS MOTIONS FOR
## JUDGMENT ON THE ADMINISTRATIVE RECORD

**FIRESTONE**, *Senior Judge*

Pending before the court in this consolidated post-award bid protest are cross motions for judgment on the administrative record filed by plaintiff Straughan Environmental, Inc. ("Straughan"), defendant the United States ("the government"), and defendant-intervenor Integrated Mission Support Services, LLC ("IMSS").  (ECF Nos. 85, 88, 91).  At issue is the National Aeronautics Space Administration's ("NASA") award of a small business set-aside contract for environmental and health services at the Kennedy Space Center, the Air Force at Cape Canaveral Air Force Station and Patrick Air Force Base to IMSS.

Generally, under the Small Business Administration's ("SBA") regulations, only firms that are small businesses either alone or together as a joint venture qualify for award in a small business set aside.  With regard to joint ventures, in particular, SBA rules provide that when a joint venture seeks to qualify for a procurement as a small business, the two organizations are considered "affiliated" and their size is aggregated for the purposes of determining the size of the joint venture. 13 C.F.R. § 121.103(a), (h). The SBA has recognized an exception to this general rule regarding joint ventures, however, for what are known as "mentor and protégé" joint ventures.  Under the SBA's mentor and protégé rules, the size determination is based only on the size of the small

business or protégé.  As the rule states, this exception applies for "[t]wo firms approved by SBA to be a mentor and protégé . . . provided the protégé qualifies as small" for the purposes of the procurement.  13 C.F.R. § 121.103(h)(3).  During the relevant time period of this case, SBA regulations provided that "SBA will review the mentor/protégé relationship annually to determine whether to approve its continuation for another year." 13 C.F.R. § 124.520(e)(4) (2012).[1] In addition, SBA regulations at the time relevant to this case provided that an offeror's size status is determined "as of the date the concern submits a written self-certification that it is small to the procuring activity as part of its initial offer (or other formal response to a solicitation), which includes price."  *Id.* § 121.404(a) (2012).

IMSS is a joint venture between Herndon Solutions Group, LLC ("HSG"), a small business, and InoMedic Health Application ("InoMedic"), which was the incumbent large business previously providing the environmental and health services at issue to NASA. A mentor-protégé agreement between HSG and InoMedic was approved by the Nevada District Office on December 19, 2013.  AR Tab 773 at 39080.  The December 19, 2013 mentor-protégé agreement between HSG and InoMedic stated in relevant part:

> This agreement shall expire after one year, unless SBA approves an extension.  The protégé must request continuance of the agreement from its servicing district office, in writing, at least 60 days prior to the expiration of

---

[1] As discussed *infra*, these rules have since been modified to allow for automatic renewal of mentor/protégé agreements during the protégé firm's annual review. 13 C.F.R. §124.520(e)(5). These agreements are allowed to be in effect for up to 3 years and can be renewed once for another three-year period. *Id.*

the agreement.  This agreement will automatically terminate
if the Protégé graduates from the 8(a) Business Development
Program, or its program participation term expires.

*Id.*

IMSS submitted its proposal for the NASA contract on January 5, 2015 without

clear evidence of an approved mentor-protégé agreement dated before the December 13,

2014 expiration date.  Straughan's core argument in this case is that HSG and InoMedic

did not have a valid mentor-protégé agreement on the date that IMSS submitted its

proposal and therefore IMSS was not eligible for the contract award it received on

September 29, 2015. AR Tab 913 at 67698.  Straughan argues in the alternative, if IMSS

is found to be eligible for award, NASA's decision to exclude Straughan from the

competitive range and NASA's decision to include only IMSS in the competitive range

are improper.

Straughan filed its initial complaint in this court on October 19, 2015 and its first

motion for judgment on the administrative record on November 17, 2015. (ECF Nos. 1,

30, 31).  Shortly after Straughan filed its motion for judgment on the administrative

record in 2015, the government notified the court that the contracting officer was

requesting a formal size determination for IMSS from the SBA and asked that the case be

stayed. (ECF No. 33).  The case was stayed for a significant period while the SBA size

determination process continued. (ECF No. 34).  Eventually, the SBA issued a formal

size determination in favor of IMSS after a series of appeals at the SBA before the Office

of Hearings and Appeals (OHA).  The stay was lifted and briefing on the SBA's June 13, 2016 size determination decision was completed on September 28, 2017.

Now pending before the court is Straughan's initial motion on the administrative record challenging NASA's rejection of its proposal and selection of IMSS for award together with Straughan's new motion for judgment on the administrative record challenging the legal correctness of the SBA's formal size determination and the dismissal of Straughan's appeal of that decision to OHA for lack of standing.  Straughan also asks for an injunction setting aside the contract award to IMSS.

For the reasons below, the court **GRANTS** Straughan's second motion for judgment on the administrative record and finds that the SBA's determination that IMSS was eligible for the award is contrary to the language of the mentor-protégé agreement, the applicable SBA regulations regarding mentor-protégé agreements, and OHA precedent.  The court **DENIES** the government and IMSS' cross motion for judgment on the administrative record.

The court, however, **DENIES** Straughan's request for injunctive relief and will not set aside the award of the contract to IMSS or the two year option recently exercised by the government.  Whether Straughan is entitled to bid preparation costs, if sought, will be resolved in a separate order.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  Request for Proposal and Submissions

NASA issued solicitation no. NNK14513883R ("solicitation") on October 10, 2014 for the "Kennedy Environmental and Medical Contract" ("KEMCON"). AR Tab 331 at 7060.  In the solicitation, NASA stated that it intended to award a cost-plus-award-fee contract, with an indefinite delivery, indefinite quantity ("IDIQ") component consisting of a cost-plus-fixed-fee, for environmental and health services at Kennedy Space Center, Cape Canaveral Air Force Station, and Patrick Air Force Base.  AR Tab 333 at 7084, 7147, Tab 334 at 7188.  Under section L.2, entitled "type of acquisition," the solicitation stated that "[i]n accordance with Federal Acquisition Regulations ("FAR") 52.219-6, this acquisition is a total small business set-aside." AR Tab 333 at 7147, Tab 710 at 38527.

The solicitation, as amended, stated in Section M that proposals would be evaluated using three evaluation factors: cost, mission suitability and past performance. AR Tab 710 at 38555. With regard to the relative order of importance of these evaluation factors, the solicitation stated: "All evaluation factors other than Cost, when combined, are approximately equal to Cost.  Cost is more important that Mission Suitability, which is more important than Past Performance." *Id.*  Further, the solicitation stated that NASA would not weigh or score the cost factor. *Id.* at 38561.  Rather, NASA would evaluate the realism and reasonableness of the proposed costs in accordance with FAR § 15.404 and would use the results of that analysis to determine the most probable cost to the government, "including ensuring proposal costs are realistic for the work to be

performed, reflect a clear understanding of the requirements, and are consistent with the various elements of the offeror's proposal." *Id.* at 38561-62.

NASA received five proposals by the amended proposal submission deadline of January 6, 2015.[2] AR Tab 478 at 9542-44 (proposal receipt log).  The proposals included (1) Chenga Support Services, LLC, (2) Great Southern Engineering ("GSE"), (3) IMSS, (4) Straughan and (5) VZ Technologies, LLC.  In its offer including price, IMSS certified that it was a small business joint venture with an SBA-approved mentor-protégé agreement as authorized by 13 C.F.R. § 121.103(h). AR Tab 515 at 12885-86 (cover letter), Tab 522 at 13880-14005 (model contract with representations and certifications).

### B.  Competitive Range Determination

In accordance with the Request for Proposals' (RFP) Evaluation Plan and FAR Part 15, NASA FAR Supplement ("NFS") 1815.305, a source evaluation board ("SEB") reviewed each proposal. AR Tab 692 at 34867-75.  The SEB consisted of agency officials who were responsible for reviewing each proposal and preparing a report to submit to the source selection authority ("SSA"). *Id* at 34874.  On May 21, 2015, the SEB presented the SSA with its evaluation and scoring of each proposal.  The SEB recommended establishing a competitive range of the two highest rated proposals, IMSS and [. . .]. AR Tab 702 at 35828.  The SEB found that "[t]here is a clear gap with regards to mission suitability and past performance between IMSS and [. . .] relative to all other offerors." *Id.*  The SEB also found that "IMSS ha[d] the lowest overall proposed cost" and that

---

[2] Although it was dated January 6, 2015, IMSS' initial offer including price was submitted on January 5, 2015. AR Tab 478 at 9542-44.

"Straughan ha[d] the lowest probable cost." *Id.*  The SEB recommended excluding Straughan from the competitive range on the grounds that "[i]n looking at the mission suitability evaluation and ratings" of Straughan and the two other offerors compared to IMSS and [. . .], "the SEB [did] not believe that the bottom three offerors have a reasonable chance of being selected for an award even if their proposals are improved." *Id.*

As permitted by the solicitation, the contracting officer ("CO") determined that discussions were necessary before the contract could be awarded.  AR Tab 703 at 35865. Consistent with the terms of the solicitation and FAR § 15.306(c), the CO proceeded to establish a competitive range comprised of the most highly rated proposals. *Id.*  As such, in a memorandum dated May 26, 2015, the CO "determined IMSS's proposal is the most highly rated proposal and that it is in the best interest of the Government to proceed with discussions with IMSS and no other offerors." *Id.* at 35870.  The SSA concurred. *Id.*

In the May 26, 2015 memorandum, the CO noted that "Straughan had an assessment in one of the three evaluation factors that is deemed equivalent to the same factors in the IMSS proposal," but found that "Straughan has significantly lower ratings/assessments in the other two factors relative to those same factor's ratings/assessments of the proposal from IMSS." *Id.* at 35869.  The CO found "[w]ith regard to Straughan's proposal, while it received a significantly lower Mission Suitability score and a significantly lower Past Performance assessment, Straughan's proposed Cost was only slightly higher and their probable Cost only slightly lower to the proposed and assessed Cost on IMSS's proposal." *Id.*

8

The CO continued, "[a] review of Straughan's Mission Suitability findings shows that Straughan had no strengths or significant strengths, but did have a significant weakness and five weaknesses that they would be afforded an opportunity to correct during discussions and final proposal revisions." *Id.*  As explained in the request for proposals, Mission Suitability was divided into two subfactors, which were each assigned 500 points. AR Tab 374 at 7942-48.  NASA had concluded that Subfactor A of Straughan's proposal contained a significant weakness and deducted 275 points out of the 500 available for that subfactor. AR Tab 701 at 35714.  NASA also concluded that Subfactor B of Straughan's proposal contained five weaknesses and deducted 225 points out of the 500 available for that subfactor. *Id.*

Ultimately, the CO found that "the high probability that Straughan's proposal would not be competitive for award, even following discussions and submission of final proposal revisions, drives the determination that their proposal is not among the most highly rated proposals when considering all equivalent factors and their relative importance as set forth in the RFP." *Id.*  Therefore, the CO concluded that "[a]s a result the proposal from Straughan falls outside the competitive range." *Id.*

C.  Discussions and Initial Clarification Regarding IMSS' Mentor-Protégé Agreement

On May 27, 2015, NASA notified IMSS that it had completed its initial evaluation of proposals and determined that IMSS was within the competitive range. AR Tab 708 at 35886.  Accompanying the May 27, 2015 letter were questions regarding IMSS' "weaknesses" and "clarifications." *Id.*  One clarification, entitled "Small Business

Administration—Approved Mentor-Protégé Agreement," noted that "[t]he IMSS proposal states, 'InoMedic and HSG have an SBA-approved Mentor-Protégé Agreement.'" Id. at 35892.  NASA requested that IMSS "provide proof of SBA's approval." Id.

On June 1, 2015, in response to NASA's request for clarification, IMSS provided a memorandum dated December 19, 2013 from [. . .], Associate Administrator of the SBA's Office of Business Development, to [. . .], Director of the SBA's Nevada District Office. AR SBA Tab 43a at 1144.  The December 19, 2013 memorandum approves the mentor-protégé agreement between HSG and InoMedic and states in relevant part:

> This agreement shall expire after one year, unless SBA
> approves an extension.  The protégé must request continuance
> of the agreement from its servicing district office, in writing,
> at least 60 days prior to the expiration of the agreement.  This
> agreement will automatically terminate if the Protégé
> graduates from the 8(a) Business Development Program, or
> its program participation term expires.

Id.

On June 8, 2015, NASA requested "more current evidence of SBA's approval of [IMSS'] mentor/protégé relationship." AR Tab 43a at 1104.  On June 11, 2015, IMSS provided the government with a letter dated June 9, 2015 from [. . .], Business Opportunity Specialist, Las Vegas, Nevada District Office to Christine Herndon, President and Chief Operating Officer of HSG. SBA AR Tab 43a at 1104, 1156.  In his June 9, 2015 letter, [. . .] stated "[p]lease be advised that your request to continue the mentor/protégé agreement between HSG, LLC as Herndon Solutions Group., and InoMedic Health Applications, Inc., has been approved by the SBA's review of the

mentor/protégé relationship as part of FY 2015 8(a) annual review process." *Id.*  [. . .]

further stated "[y]our next Mentor/Protégé relationship continuation review will be

conducted on your next 8(a) annual review which will be due on 2/10/2016." *Id.*

Apparently, in addition to the above letter, in the annual review letter dated June

12, 2015 from [. . .] to HSG, he stated that HSG's "annual review for the program year

2/17/2014 thru 2/16/15 is completed and your continued participation in the 8(a) Program

has been approved." SBA AR Tab 58b at 2264.  [. . .] continued, "[a]dditionally, your

Mentor Protégé Agreement is approved as well." *Id.*  In an earlier 8(a) Program annual

review letter dated August 28, 2014, [. . .] had stated "[y]our annual review for the

program year 2/17/2013 thru 2/16/2014 is complete and your continued participation in

the 8(a) Program has been approved." SBA AR Tab 58a at 2262.  Unlike in the June 12,

2015 8(a) approval letter, [. . .] August 28, 2014 letter did not mention the mentor-protégé

agreement. *Id.*

D.  Government Accountability Office Protest

Straughan filed a pre-award bid protest at the Government Accountability Office

("GAO") on June 15, 2015.  AR Tab 822 at 43270.  In its protest, Straughan argued that

NASA unreasonably identified weaknesses in Straughan's proposal and that Straughan

should not have been excluded from the competitive range. *Id.* at 43293.  Straughan did

not allege that IMSS was not small and thus ineligible for the contract award. *Id.*  GAO

denied the protest on September 18, 2015.  AR Tab 833 at 43875 (B-411650).

E.  Award

On September 21, 2015, Robert D. Cabana, the SSA and Director of the John F.

Kennedy Space Center, selected IMSS for award of the contract.  AR Tab 907 at 67688-

92. On September 21, 2015, NASA sent Straughan a pre-award notification that IMSS

was the apparent successful offeror.  AR Tab 911 at 67696.  The September 21, 2015 pre-

award notification stated:

> The Government will not consider subsequent proposal
> revisions. A response to this letter is not required unless a
> basis exists to challenge the small business size status.
> Pursuant to FAR 19.302(d)(1), in order to be timely, a size
> protest of any concern or other interest party must be received
> by the Contracting Officer by the close of business of the 5th
> business day after the receipt of the notification from the
> Contracting Officer that identifies the apparently successful
> offer. Per FAR 19.302(c)(2), the size protest shall be in
> writing and shall contain the basis for the size protest with
> specific, detailed evidence to support the allegation that the
> offeror is not small.

*Id.*[3]

---

[3] FAR § 19.302(d) states that "[i]n order to affect a specific solicitation, a protest must be timely.
SBA's regulations on timeliness are contained in 13 CFR § 121.1004.  SBA's regulations on
timeliness related to protests of disadvantaged status are contained in 13 CFR 124, Subpart B."
FAR § 19.302(d)(1) provides that "[t]o be timely, a protest by any concern or other interested
party must be received by the contracting officer . . . by the close of business of the fifth business
day after . . . receipt of the special notification from the contracting officer that identifies the
apparently successful offeror (in negotiated acquisitions) . . . ."  FAR § 19.302(d)(2) further
states that "[e]xcept as provided in paragraph (d)(4) of this section [regarding a premature protest
filed before notification to offerors of the selection of the apparent successful offeror], a protest
filed by the contracting officer or SBA is always considered timely whether filed before or after
award."  In addition, 13 C.F.R. § 121.1004 provides that "[a] protest must be received by the
contracting officer prior to the close of business on the 5th day, exclusive of Saturdays, Sundays,
and legal holidays, after the contracting officer has notified the protestor of the identity of the
prospective awardee for . . . [t]he contract . . . ."

NASA awarded the contract to IMSS on September 29, 2015.  AR Tab 913 at

67698.  Including option years, the contract is a five (5) year, IDIQ contract valued at

$103 million, with baseline services valued at $88 million and task order services valued

at $15 million.  Dearborn Decl. ¶ 2.  The period of performance consists of a two-year

base period (from November 1, 2015 to September 30, 2017) valued at $34 million, a

two-year option period (from October 1, 2017 to September 30, 2019) valued at $36

million, and a one-year option period (from October 1, 2019 to September 30, 2020)

valued at $18 million. *Id.*  ¶ 3.  At the time of this opinion, NASA has exercised the first

option.

F.  Initial Protest before this Court (Case No. 15-1217C)

Straughan filed its original complaint in this case on October 19, 2015.

Accompanying its complaint, Straughan filed motions for a preliminary and permanent

injunction and a temporary restraining order (ECF Nos. 2-4).  The motions were

withdrawn on October 22, 2015 (ECF No. 12).

On December 1, 2015, after Straughan filed its motion for judgment on the

administrative record, the government notified the court that NASA intended to request

a formal size determination of IMSS from SBA for the purpose of evaluating

Straughan's SBA-related arguments (ECF No. 33).  On December 2, 2015, the court

granted the government's unopposed request to stay the protest and vacated the

remaining briefing deadlines and cancelled the scheduled oral argument (ECF No. 34).

G.  SBA Proceedings

On December 9, 2015, pursuant to 13 C.F.R. § 121.1001, the CO requested a formal size determination of IMSS, specifically referencing IMSS mentor-protégé agreement.  SBA AR Tab 43a at 1099-1105.  In her request, the CO specifically asked whether IMSS "had appropriate SBA approval of its mentor-protégé relationship." *Id.* In response to the CO's request, the matter was referred to [. . .], Acting Area Director for Government Contracting of SBA's San Francisco, California Area VI Office.  Before a decision was rendered, IMSS was notified and asked to respond to the request.

Upon review, on January 13, 2016, [. . .] made a formal size determination that IMSS was "other than small under the size standard" for the solicitation at issue in this case.  SBA AR Tab 52 at 2215-23 (Size Determination No. 6-2016-024).  The January 13, 2016 decision was signed by [. . .] and the contact for further information was [. . .], Size Program Specialist.

 Specifically, [. . .] found that IMSS did not qualify as small as of the date it self-certified that it was small to NASA on the grounds that the mentor-protégé agreement between HSG and InoMedic had expired on December 19, 2014. SBA AR Tab 52 at 2221 (citing 13 C.F.R. §121.404(a)).  [. . .] explained that under the then applicable regulations, SBA was required to review the mentor/protégé relationship annually to determine whether to approve its continuation for another year. *Id.* at 2221-22 (quoting 13 C.F.R. § 124.520(e)(4)).  [. . .] stated that "[b]ecause SBA did not approve HSG's agreement for another year, the approval of the agreement expired on its one-year anniversary, which was December 19, 2014." *Id.* at 2222.  IMSS argued that the one-year

14

time limit on the mentor-protégé agreement did not mean 365 days from which the agreement was entered into but rather a year after the completion of the next annual review of HSG's participation in the 8(a) program.  [. . .] rejected this argument and found, "[e]ven if the mentor/protégé agreement is reviewed as part of an 8(a) participant's annual review, HSG's most recent annual review took place in February 2015.  That means that a previous annual review may have taken place in February 2014, two months after the December 2013 approval of the mentor/protégé agreement and, at which time, SBA would not have considered extending the approval as it had just been approved two months earlier." *Id.*

In the decision, [. . .] also explained that "[t]he only reasonable interpretation of the [December 19, 2013] approval letter is that approval would expire after one year on December 19, 2014"  if a request to extend was not received 60 days before its expiration. *Id.*  [. . .] noted that "there is no evidence that IMSS requested continuance of the agreement at least 60 days prior to the expiration date of the agreement, as required in the approval letter of December 19, 2013." *Id.*

[. . .] also addressed the June 9, 2015 letter from SBA business specialist [. . .] in which [. . .] claimed that he had conducted an annual review in February 2014, two months after the mentor-protégé agreement was signed.  [. . .] explained that there would have been no reason for the SBA to have conducted an annual review of the mentor-protégé agreement two months after it was signed.  [. . .] determined that the June 9, 2015 letter was "irrelevant to the size determination since it was issued after . . . the date for determining size." *Id.*  Citing prior SBA decisions, [. . .] explained that while the

15

June 9, 2015 letter may have indicated that the mentor-protégé agreement was still in effect, the approval could not resurrect the expired 2013 mentor-protégé agreement, but was instead a new approval stating, "a mentor/protégé approval that takes place after a joint venture's offer submission is not effective to qualify the joint venture for the mentor/protégé affiliation exception." *Id.* (citing *Lukos-Vatc Jv, LLC*, SBA No. SIZ-5532 (Feb. 6, 2014)).  For all of these reasons, [. . .] concluded that "[b]ecause SBA did not review IMSS' agreement until after IMSS submitted its offer on the procurement, the mentor/protégé joint venture exception does not apply to IMSS." *Id.*  The decision set forth IMSS' appeal rights and a copy was sent to NASA. *Id.*

IMSS appealed to SBA's OHA on January 27, 2016.  SBA AR Tabs 1, 1a at 1-90. In its appeal, IMSS included a new letter from business opportunity specialist [. . .] dated January 21, 2016.  SBA AR Tab 59 at 2266.  In his January 21, 2016 letter, [. . .] stated that HSG's "mentor protégé agreement was approved on December 13, 2013 and is required to be reapproved annually to remain valid per 13cfr125.520.e.4." *Id.*  [. . .] continued, "I, as the Business Opportunity Specialist, reviewed your mentor protégé worksheet that you submitted as part of the 2014 8(a) annual review period that closed out on February 17, 2014." *Id.*  [. . .] further stated, "I did not prepare a letter at that time since it had only been three months since the approval." *Id.*  [. . .] also stated that he again reviewed the mentor-protégé agreement during the 2015 8(a) annual review, which closed out on February 17, 2015. *Id.*  [. . .] noted that "[a] letter was sent to you on June 12, 2015 indicating the annual review was approved and that the mentor protégé [agreement] was extended." *Id.*  [. . .] concluded, "[a]gain, the mentor protégé

agreements are reviewed on an annual basis during the annual review.  Your agreement was and continues to be in good standing." *Id.*

Armed with [. . .] January 21, 2016 letter, on March 21, 2016, the SBA Office of General Counsel filed a motion with OHA seeking a remand of the matter for further consideration by the SBA Area Office.  SBA AR Tab 8 at 512.  In its motion, the Office of General Counsel stated that "SBA may not have properly processed and considered all information available to the Agency in issuing the January 13, 2016 size determination finding that [IMSS] is other than small." *Id.*  On March 22, 2016, OHA granted the motion, vacated the size determination, and remanded the matter to the SBA Area Office.  SBA AR Tab 9 at 516 (SBA No. SIZ-5724).  On April 28, 2016, [. . .], who had issued the initial size determination on January 13, 2016, e-mailed [. . .], Size Program Specialist, regarding IMSS' size determination.  SBA AR Tab 24a at 888.  In this e-mail, [. . .] asked [. . .] to "inform the [contracting officer] that this remanded size determination is being coordinated through SBA's legal counsel" and "please do not advise the [contracting officer] on your recommendation or when this size det[ermination] will be completed." *Id.*  [. . .] stated that "this particular remand size det[ermination] is very politically charged and may have severe 'fallout' depending upon the way the size det[ermination] gets determined." *Id.*

On June 13, 2016, SBA's San Francisco Area VI Office issued a remand decision signed by Seán F. Crean, Director of Government Contracting, written "in concert with SBA's Office of General [Counsel]," finding that IMSS was small for the purposes of the

solicitation.  SBA AR Tab 64 at 2295 (Size Determination No. 6-2016-046).[4]  Mr. Crean

stated that he would determine IMSS' size status as of January 6, 2015, the date IMSS

self-certified that it was a small business to NASA as part of its initial offer, including

price.  *Id.* at 2296 (citing 13 C.F.R. § 121.404(a)).  Mr. Crean stated that "IMSS would be

exempt from affiliation only if IMSS had an approved mentor-protégé agreement in place

as of January 6, 2015, and if the joint venture agreement meets the requirements of 13

C.F.R. §§ 124.513(c) and (d)."  *Id.* at 2297.  Mr. Crean noted that "[b]ecause no clear

evidence was provided establishing the explicit extension for the continuation of IMSS'

mentor-protégé agreement on its one-year anniversary, the Area Office initially

determined that IMSS did not have a valid mentor-protégé agreement in its initial size

determination."  *Id.* at 2297-98.

However, Mr. Crean then explained that after IMSS filed an appeal, "SBA sought

a remand in this case because it appeared that certain facts existed that SBA had not

properly considered.  More specifically, it appeared that the Business Opportunity

Specialist (BOS) conducted his required review of the mentor-protégé relationship as part

of his annual review of HSG in February 2014.  In approving the firm's continued

participation in the 8(a) Program after conducting this annual review, the BOS essentially

approved continuation of the mentor-protégé relationship between HSG and InoMedic."

---

[4] The remand decision states incorrectly that NASA initiated a size status protest for IMSS "[a]t
the request of the U.S. Court of Federal Claims."  SBA AR Tab 64 at 2296 n.2; *see* ECF No. 33
(defendant's notice, filed December 1, 2015, of intent to request formal size determination from
SBA and unopposed motion to vacate the court's November 4, 2015 scheduling order and stay
Straughan's bid protest).

*Id.* at 2298.  Mr. Crean quoted [. . .] January 21, 2016 letter to HSG and emphasized that

[. . .] had said, with regard to the 2015 8(a) annual review, that "[a] letter was sent to you

on June 12, 2015 indicating that the annual review was approved *and that the mentor*

*protégé [agreement] was extended.*"  *Id.* at 2298.  Mr. Crean stated that "[i]n order for

SBA's BOS to consider whether the mentor-protégé agreement should be 'extended,' the

only reasonable conclusion is that the agreement must have been in effect at the time of

his review."  *Id.*

Mr. Crean further stated that "[t]his means that he did in fact 'approve' the

continuation of the mentor-protégé agreement as part of his annual review in February

2014."  *Id.*  Mr. Crean concluded, "[t]herefore, based on new information provided by the

BOS, it appears that a valid mentor-protégé agreement was in place at the time IMSS

submitted its initial offer for the procurement in question on January 6, 2015."  *Id.*  Mr.

Crean then found that the joint venture met the SBA's regulatory requirements.  *Id.* at

2298-99.

H.  Straughan's Appeal to SBA's OHA

In accordance with FAR § 19.302(d)(1), upon learning of the new June 13, 2016

size determination, Straughan filed an appeal with OHA on June 28, 2016.  SBA AR Tab

10a at 519.  On August 1, 2016, OHA dismissed the appeal on the grounds that Straughan

lacked standing.  SBA AR Tab 31 at 926-66 (SBA No. SIZ-5767).  OHA stated that a

party has standing to appeal a size determination, even if it is not a protestor, if it is an

"otherwise eligible small business offeror on the procurement." *Id.* at 965 (citation

omitted).  OHA found that Straughan was "not an otherwise eligible small business

19

offeror on this procurement because NASA had excluded Straughan's proposal from the competitive range, and GAO affirmed this result by denying Appellant's bid protest challenging its elimination from the procurement." *Id.*  Because OHA found that Straughan could not be awarded the contract even if it prevailed in its appeal, OHA determined that it was "not adversely affected by the instant size determination and lacks standing to bring this appeal." *Id.*

On August 5, 2016, Straughan filed a petition for reconsideration of OHA's decision that it was not an adversely affected party. SBA Tabs 32-32a at 967-1004. On September 13, 2016, OHA denied Straughan's petition for reconsideration. SBA Tab 37 at 1072-78.

## II.   LEGAL STANDARDS:

### A.  Jurisdiction and Standing

The United States Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to … the award of a contract [by a federal agency] or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1).  In *Palladian Partners, Inc. v. United States*, the Federal Circuit found that SBA decisions can be "in connection with a procurement or a proposed procurement" and thus are within the scope of this court's bid protest  jurisdiction. *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015) (affirming this court's jurisdiction over a North American Industry

Classification System (NAICS) code decision by the SBA's OHA and a contracting officer's decision to amend a solicitation pursuant to OHA's directive.).[5]

As a threshold matter, to maintain a bid protest in this court, the protestor must establish that it has standing. *Info. Tech. & Applications Corps. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). The standing inquiry "is framed by 28 U.S.C. §1491(b)(1), which . . . imposes more stringent standing requirements than Article III," and circumscribes the pool of potential plaintiffs to "interested part[ies]," as that term is defined under the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3551-56. *Weeks Marine, Inc. v. United States,* 575 F.3d 1352, 1359 (Fed. Cir. 2009); *see also Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). To establish standing, a protestor must establish that (1) it is an actual or prospective bidder and (2) it has a direct economic interest in the procurement. *Weeks Marine*, 575 F.3d at 1359 (quoting *Rex Serv. Corp.*, 448 F.3d at 1307. "To prove a direct economic interest, a party must show that it had a substantial chance of winning the contract." *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017) (quoting *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012)) (internal quotation marks omitted). In this connection, a party must "show that it was prejudiced by a significant error in the procurement process." *Id.* (quoting *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009)). To satisfy the prejudice requirement, the party must show

---

[5] The government does not dispute as a general matter that this court has jurisdiction to entertain proper challenges to SBA decisions that are in connection with a procurement or a proposed procurement. On several occasions this court has reviewed challenges to SBA decisions made in connection with a procurement or proposed procurement. *See IEI-Cityside JV v. United States*, 122 Fed. Cl. 750, 757 (2015); *Lukos VATC JV LLC v. United States*, 116 Fed. Cl. 108, 114 (2014); *Chapman Law Firm v. United States,* 63 Fed. Cl. 25, 33 (2004).

that "but for the [Government's] error, the party 'would have had a substantial chance of securing the contract.'" *Id.* at 1359 (quoting *Labatt Food Serv., Inc.*, 577 F.3d at 1378). Prejudice is a factual question. *Id.*

### B.  Review on the Administrative Record

The standard of review for bid protests is set in 28 U.S.C. § 1491(b)(4), which requires the court to "review the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA"). *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000). Under section 706 of Title 5, an agency's decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004) (quoting *Advanced Data*, 216 F.3d at 1057–58).  This review is on the administrative record and requires the court to consider whether based on the evidence in the record the agency decision: (1) "lacked a rational basis" or (2) "involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332 (citations omitted); *see also* 5 U.S.C. §§ 702, 706(2)(A).

It is now well-settled that a procurement decision is rational if "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1333.  The court's review is "highly deferential," and "the disappointed offeror bears a 'heavy burden' of showing that the award decision 'had no rational basis.'" *Impresa*, 238 F.3d at 1333; *see also Bahrain Mar. & Mercantile Int'l*

*BSC v. United States*, 118 Fed. Cl. 462, 478 (2014) (citations and internal quotations omitted).  The court may not substitute its own judgment for that of the agency, even if reasonable minds could reach differing conclusions. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).  A protestor alleging that the agency decision was arbitrary or capricious may "succeed only where the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Bahrain Mar.*, 118 Fed. Cl. at 478 (quoting *Ala. Aircraft Indus., Inc.–Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009)).

With regard to alleged errors of law, a protestor must demonstrate "a clear and prejudicial violation of applicable statutes or regulations." *Impresa*, 238 F.3d at 1333 (citation omitted); *see also Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("[T]o prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it.").

The Federal Circuit has determined that these same standards of review apply to this court's review of decisions by the SBA.  *See Palladian Partners, Inc.*, 783 F.3d at 1254.  However, this court also gives special deference to SBA determinations "because of the SBA's 'quasi-technical administrative expertise and [its] familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme.'" *LB & B Assocs. Inc. v. United States*, 68 Fed. Cl. 765, 771 (2005) (quoting *Ceres Envtl. Servs., Inc. v. United States*, 52 Fed. Cl. 23, 33 (2002)).  "At

bottom, the court may only reverse the [SBA's] decision if the court finds that the

decision is irrational or based on an erroneous application of the law." *Id.* (citing *Eagle*

*Design and Mgmt., Inc. v. United States*, 57 Fed. Cl. 271, 273 (2002)).

## III.  DISCUSSION

As noted at the outset, Straughan's principle challenge is to the SBA's June 13, 2016

decision that IMSS was an eligible small business because it had a mentor-protégé

agreement in effect at the time it submitted its final proposal including price. To reach

this issue, however, the court must first determine whether Straughan has standing to

pursue this claim. Only then can it turn to the merits of whether SBA's final size

determination regarding IMSS was improper.

### A.  Straughan has standing to challenge the SBA's final size determination

The government alleges that Straughan lacks standing to challenge the June 13,

2016  size determination on two grounds.  First, the government asserts that Straughan

failed to file a timely size protest under FAR § 19.302(d)(1) and is thus forever barred

from challenging IMSS' size status as it relates to the subject procurement.  Second, the

government argues that even if the court determines Straughan's challenge is not time

barred, this court should not reach the merits of the June 13, 2016 size determination

because OHA had dismissed Straughan's appeal for lack of standing and never reviewed

the merits of the June 13, 2016 size determination in favor of IMSS.  The court will

address each of these arguments in turn.

1. Straughan filed a timely appeal of SBA's size determination

The government argues that Straughan's protest is untimely because it initially

failed to file a size protest within five business days after receiving notification that IMSS

was the likely awardee as required by FAR § 19.302(d)(1). Def.'s Mot. for J. on the

Administrative R. (MJAR) at 66.  Specifically, FAR § 19.302(d)(1) provides that in order

for a protest "[t]o be timely, a protest by any concern or other interested party must be

received by the contracting officer . . . by the close of business of the fifth business day

after bid opening . . . or receipt of the special notification from the contracting officer that

identifies the apparently successful offer."

Straughan does not dispute that it failed to file a protest within five days; rather

Straughan argues that their appeal is timely because the CO requested a formal size

determination in this case. Pl.'s Reply at 22.  Specifically, Straughan argues that when a

CO, who does not have a filing deadline or time limit, seeks a formal size determination,

the time constraints in FAR § 19.302(d)(1) do not apply.  Rather, Straughan argues that

when the CO files a protest and the SBA issues a final size determination that adversely

impacts a party, that party is allowed to challenge the size determination under 13 C.F.R.

§ 134.302(a), regardless if they had filed under FAR § 19.302(d)(1). *Id.* Straughan argues

that it availed itself of this procedure and in this way preserved its rights to challenge the

size determination before this court. *Id.*

Although this issue has not been previously litigated in this court, after

consideration, the court agrees with Straughan that in the unique circumstances of this

case, it has standing to challenge the formal size determination because the CO sought a

size determination from the SBA based on the mentor-protégé agreement pursuant to

FAR § 19.302(d)(2); which, provides that a size protest "filed by the contracting officer

or SBA is always considered timely whether filed before or after award." As such, the

SBA was required to determine whether IMSS had a mentor-protégé agreement in place

when it submitted its proposal. Straughan's standing to pursue this challenge now before

this court, years after the five-day time limit passed, is based on its claim that the June 13,

2016 SBA size determination was made in connection with a procurement and that if the

SBA decision is wrong, IMSS was improperly awarded the contract and Straughan would

have a chance to compete in the new procurement. In accordance with the SBA's rules,

Straughan timely appealed the June 13, 2016 size determination to OHA, as a person

"adversely affected by a size determination" and is now before this court challenging the

SBA's rejection of its appeal of that decision. Because Straughan filed an appeal of the

June 13, 2016 size determination, the court finds that Straughan's action is not barred by

the five-day limit set in FAR § 19.302(d)(1).

This decision is consistent with OHA precedent. For example, in a case with facts

similar to those presented in this case, OHA determined that because the contracting

officer filed a timely size protest, an offeror who participated in the solicitation but had

failed to file a timely size protest of their own was not barred from appealing the formal

size determination issued by the SBA that determined the awardee was small. *Size

Appeal of Empire Home Medical, Inc.,* SBA No. SIZ-4291 (1998). In its decision, OHA

explained that SBA has different regulations governing standing requirements for size

protests and appeals of size determinations. *Id.*   The distinction noted in *Size Appeal of Empire Home Medical, Inc.* is equally applicable in this case.

 2. Straughan's challenge to SBA's size determination is ripe for
 judicial review

Next, the government argues that Straughan's challenge to the SBA's June 13, 2016 decision that IMSS had an active mentor-protégé agreement is not properly before this court because OHA did not reach the merits of Straughan's appeal and thus this court should not review the merits.  The government maintains that OHA is "vested with exclusive jurisdiction to review" a size determination. *Id.* citing 13 C.F.R. § 121.1101(a).

Straughan argues that the only reason OHA did not reach the merits of its objections was because OHA erroneously concluded that it lacked standing to appeal the size determination.  Straughan argues that OHA's standing decision was wrong and that if OHA was wrong in dismissing its challenge, this court should not send the matter back to OHA but instead should review the SBA size determination.

Once again, the court finds that Straughan has the better argument and concludes that if OHA erred in dismissing Straughan's size determination appeal on standing grounds, no further OHA action is required.  Rather, this court can review the June 13, 2016 size determination under its bid protest jurisdiction as a matter in connection with a procurement.

OHA dismissed Straughan's size determination appeal on the grounds that Straughan was not adversely affected because it had not been selected for the competitive range.  While the court agrees with OHA that ordinarily this fact would be fatal, it is not

in this case because IMSS was the only offeror that made the competitive range and thus if it were not eligible for award, there were no other offerors ahead of Straughan.  In such circumstance, OHA's conclusion that Straughan lacked standing because it was not selected for the competitive range is not legally supported.  Where there is only one offeror in the competitive range, a finding that IMSS was ineligible would have required reconsideration of the award decision; thus, Straughan was an adversely affected party.[6]

Next, the court turns to the government's contention that this court does not have jurisdiction to consider the merits of the size determination because OHA never reached the merits of the size determination on appeal.  The court disagrees with the government that the SBA's June 13, 2016 size determination is not reviewable.  OHA's incorrect decision concerning Straughan's standing is not fatal to this court's ability to review the merits of Straughan's appeal in the circumstances of this case.  If the government is correct, remand to OHA would be required for further review of the merits of Straughan's challenge.  It makes no sense at this stage of the litigation to remand this matter to the OHA.  The Federal Circuit has recognized that requiring an administrative appeal is not required where it would be "futile."  See *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (quoting *Bendure v. United States*, 213 Ct. Cl. 633, 554 F.2d 427, 431 (1977)).  The court finds that remanding the merits of the size determination for further OHA consideration would be futile in the context of this case. SBA has made its position in the briefing clear that IMSS had a valid mentor-protégé

---

[6] It is for these same reasons that the court concludes that Straughan is an interested party and thus has standing before this court.

agreement at the time it submitted its final proposal including price. Therefore,

Straughan's challenge of SBA's June 13, 2016 size determination may be heard without

further OHA review.

### B. SBA's IMSS Size Determination Was Contrary to Law

Having determined that this court has jurisdiction to consider Straughan's

challenge to the June 13, 2016 size determination, the court will now address the merits

of that claim. Resolution of the issue will have no precedential value because as noted at

the outset the regulations governing SBA approval of mentor-protégé agreements have

now changed and annual written approvals are no longer required.[7]   Nonetheless, after

careful review the court finds that Straughan's readings of the mentor-protégé agreement,

the applicable regulation and OHA precedent are correct and that at the time IMSS

submitted its initial offer including price, IMSS did not have an approved mentor-protégé

agreement in place because the agreement expired on December 19, 2014.

---

[7] As noted above, the regulation governing mentor-protégé agreements under the SBA's 8(a) business development program was revised in 2016 to state in relevant part:

> SBA will review the mentor-protégé relationship annually during the protégé firm's annual review to determine whether to approve its continuation for another year. Unless rescinded in writing at that time, the mentor-protégé relationship will automatically renew without additional written notice of continuation or extension to the protégé firm. The term of a mentor-protégé agreement may not exceed three years, but may be extended for a second three years. A protégé may have two three-year mentor-protégé agreements with different mentors, and each may be extended an additional three years provided the protégé has received the agreed-upon business development assistance and will continue to receive additional assistance through the extended mentor-protégé agreement.

13 C.F.R. § 124.520(e)(5); Small Business Mentor Protégé Programs, 81 Fed. Reg. 48,558, 48,584 (July 25, 2016). SBA's OHA has found that these changes, which took effect August 24, 2016, "have no bearing on whether there was a valid mentor-protégé agreement in effect" as of earlier dates. *Size Appeal of Quadrant Training Sols., LLC*, SBA No. SIZ-5811 (2017).

First, the court agrees that in order to have had a valid agreement per the terms of IMSS' 2013 mentor-protégé agreement, HSG needed to have submitted a notice in writing to the SBA seeking an extension at least 60 days prior to the expiration of the agreement and the SBA needed to have reviewed and approved the same. The court finds that HSG failed to timely seek an extension in writing at least 60 days prior to the expiration of the agreement on December 19, 2014 and never received written approval of an extension prior to December 19, 2014. Thus, the mentor-protégé agreement was allowed to lapse.

Second, the court also agrees with Straughan that the June 9, 2015 letter from [. . .] could not serve as proof of a mentor-protégé agreement because it was dated after January 5, 2015, the date IMSS submitted its final proposal including price.  Third, the court also  agrees with Straughan that the January 21, 2016 letter's determination that when the SBA approved HSG's continued participation in the 8(a) program in February 2014 it also approved the extension of IMSS' mentor-protégé agreement is without merit because the small business 8(a) program approval is separate from the mentor-protégé agreement and the SBA's approval of HSG's continued status as a small business is not the same as approval of their mentor-protégé agreement with InoMedic.  Further, Mr. Crean's contention that IMSS had an active mentor-protégé agreement in 2014 based on the assertions made in [. . .] January 21, 2016 letter is not consistent with OHA's precedent.

In a consistent line of OHA decisions regarding mentor-protégé agreements, OHA has held, in keeping with the rule that size is determined as of the date the concern

30

submits its initial offer including price, that "the only relevant evidence that could cause [SBA] to declare a mentor-protégé agreement was in effect would have to be dated before . . . the date [the joint venture] submitted its offer including price." *Size Appeal of North Star Magnus Pac. Joint Venture*, SBA No. SIZ-5715 (2016) (citation omitted).  In *Size Appeal of North Star Magnus Pac. Joint Venture*, a joint venture failed to obtain an extension of its mentor-protégé agreement before the agreement expired on July 5, 2015 but nonetheless submitted a proposal for a procurement on July 17, 2015.  *Id.*  OHA found that the mentor-protégé agreement was not in effect as of July 17, 2015 even though the district office expressly approved a request to extend the agreement on October 30, 2015 "for one year through July 4, 2016."  *Id*.  OHA also found that there was no language in the district office's approval of the appellant's business plan that extended the mentor-protégé agreement and that in any case the approval of the extension of the mentor-protégé agreement on September 28, 2015, after North Star had submitted its initial offer including price.  *Id.* Similarly, in *Size Appeal of DCS Night Vision JV, LLC.*, SBA No. SIZ-4997 (2008), OHA found that the appellant could not assume that SBA had approved its request for an extension of a mentor-protégé agreement without explicit approval.  In considering DCS' arguments, OHA determined that "the only relevant evidence that could cause a tribunal to declare the Mentor-Protégé Agreement was in effect would have to be dated before . . . the date when Appellant submitted its offer, including price."  Id.

In *Size Appeal of WISS Joint Venture*, the appellant submitted a proposal for a procurement on April 15, 2015, after its mentor-protégé agreement had expired. *Size Appeal of WISS Joint Venture*, SBA No. SIZ-5729 (2016), recons. denied, SBA No. SIZ-5755 (2016). OHA determined that the appellant's argument that the district office "essentially approved an extension of the mentor-protégé agreement when it conducted [the firm's] annual 8(a) program review is meritless." *Id.* OHA explained that "the mere fact that the [district office] had all of the information it needed to authorize an extension of the mentor-protégé agreement under 13 C.F.R. § 124.520(e)(4) does not establish that such an extension actually occurred." *Id.*

Finally, in *Size Appeal of Quadrant Training Sols., LLC,* SBA No. SIZ-5768 (2016) ("Quadrant I"), the appellant protested the size status of Field Training Support Services Joint Venture. SBA's Illinois District Office concluded that since "mentor/protégé related issues were specifically considered in each Annual Review," the district office must have approved the mentor-protégé agreement during the small business' annual review in June 2014. *Size Appeal of Quadrant Training Sols., LLC,* SBA No. SIZ-5768 (2016). OHA reversed, finding that "it does not follow that, because the Illinois District Office 'specifically considered' the mentor-protégé relationship [in the annual review], the Illinois District Office must have approved the mentor-protégé agreement for another year." *Id.* On August 18, 2017, Field Training Support Services filed a complaint in this court challenging OHA's decision in Quadrant I. The court remanded the matter to OHA for further consideration in light of a document titled "8(a)

Annual Review Requirements List" dated July 24, 2015 which was approved by the director of the district office on August 18, 2015. *Field Training Support Servs. v. United States*, No. 16-1023C, 2016 WL 7212326 (Fed. Cl. Dec. 13, 2016). On remand, in *Size Appeal of Quadrant Training Sols., LLC,* SBA No. SIZ-5811 (2017) ("Quadrant II"), SBA's OHA again found that "while the Illinois District Office may have had the information necessary to grant an extension [of the mentor-protégé agreement], it neglected to actually do so." *Size Appeal of Quadrant Training Sols., LLC,* SBA No. SIZ-5811 (2017).  OHA found that although the requirements list discusses mentor-protégé agreements, the requirements list did not support the conclusion that the district office granted an extension of the mentor-protégé agreement on the grounds that the purpose of the requirements list is to determine whether to retain a firm in the 8(a) program, not to consider mentor-protégé issues. *Id.*

For all of these reasons, the court finds that the SBA's June 13, 2016 size determination was inconsistent with the language of HSG's and InoMedic's mentor-protégé agreement, SBA regulations, and established OHA precedent.

### C.  Straughan's Challenge to NASA's Competitive Range Determination

Having concluded that IMSS was not eligible for award, there is no need for the court to discuss Straughan's allegations that it should have been included in the competitive range because as the only offeror in the competitive range, IMSS' ineligibility would result in NASA's competitive range determination being not in

accordance with law because as a small business set-aside, only small businesses can be in the competitive range. *See* FAR § 52.219-6(c)(2). Whether NASA should be ordered to reevaluate qualified offerors or resolicit the contract will be discussed below.

## IV.   RELIEF

Because the court has determined that SBA's size determination is not supported, the court must now address whether Straughan is entitled to injunctive relief. In order to obtain a permanent injunction, a plaintiff must show that "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004)).

Straughan argues that it has met the criteria for an injunction setting aside the award to IMSS on the grounds that it will suffer irreparable harm, because it continues to suffer due to "the loss of potential work and profits" which outweighs any inconvenience or cost to the government. Pl.'s Reply at 29. Straughan asserts that the government can establish a bridge contract to cover any disruption in service. *Id.* Straughan also argues that the public interest is best served by a grant of injunctive relief requiring the government to follow applicable statutes and regulations in making an award. *Id.* at 30.

The government argues that Straughan has not been "irreparably" harmed because it has shown only economic damages of lost profits. Def.'s MJAR at 77. In addition, the government asserts that the balance of hardships to the respective parties does not favor injunctive relief. Def.'s MJAR at 77-78 (citing Dearborn Decl.). In her July 14, 2017 declaration, the NASA contracting officer Ms. Dearborn describes a litany of significant costs, disruptions in critical services, and damaging impacts to the workforce that would result from terminating the contract entering its third year. Dearborn Decl. ¶¶ 5-10. For example, Ms. Dearborn states that "[i]f the Court were to issue a permanent injunction finding IMSS ineligible for award under the [contract] and directing NASA to terminate its contract with IMSS, the resulting disruption in services could hinder compliance with numerous state and federal laws and regulations, negatively impacting mission execution." Dearborn Decl. ¶ 5. Ms. Dearborn further describes "damaging impacts to the workforce" and the loss of qualified and knowledgeable professionals. Id. ¶¶ 6-7. Ms. Dearborn also states that "the Government would incur significant additional reprocurement costs" and that "[r]ecompetition would take approximately 18 months." Id. ¶ 8. Ms. Dearborn states that "the environmental and medical services provided under [contract] are essential to the functioning of KSC and the affected USAF facilities" and that in order to maintain those services, "NASA will be forced to enter into a bridge contract with IMSS on a sole-source, non-competitive basis until a reprocurement is complete." Id. ¶ 9. Ms. Dearborn states that "[s]uch a bridge contract will likely cost the Government significantly more" than the contract with IMSS. Id. Furthermore, at oral argument, the government informed the court that it had recently exercised the first two

year option with IMSS and that if the court directed NASA to reprocure these services it would take at least 18 months to complete the process.

The court agrees with the government that the balance of hardships in this case weighs against granting injunctive relief. The injunctive relief Straughan seeks would cause a substantial risk of disruption of critical services being provided under the contract, including support for emergency medical responses, treatment of occupational injuries and illnesses, and disposal of hazardous and universal waste. Dearborn Decl. ¶ 5. The agency would also likely face damaging impacts to the workforce, significant additional costs in connection with a lengthy reprocurement, a higher-priced bridge contract, and potentially more litigation. Id. ¶¶ 6-10. In contrast, Straughan has presented only speculative arguments that it is suffering "potential" lost profits absent injunctive relief. Pl.'s Reply 29. Straughan's harms do not outweigh the harm to NASA. Moreover, the court is mindful that Straughan has contributed to the government's harm by failing to renew its motion for a preliminary injunction, which it initially filed in 2015 and withdrew before the CO sought a formal size determination of IMSS from the SBA. By allowing so much time to pass, the balance of equities plainly tips in favor of the government and IMSS. Finally, the public interest weighs against an injunction. Now that the contract has been in place for more than two years and the first option has been exercised, requiring NASA to resolicit for these essential services would be detrimental to the NASA's public mission. For all of these reasons the court finds that Straughan is not entitled to an injunction. Accordingly, injunctive relief is **DENIED**.

**CONCLUSION**

For the reasons above, Straughan's motion for judgment on the administrative record is **GRANTED**.  Straughan's request for permanent injunctive relief is **DENIED**. The government and IMSS' cross motions for judgment on the administrative record are **DENIED**.  With regard to Straughan's request for bid preparation and proposal costs, the plaintiff shall have until **November 13, 2017** to file a proposed final judgment or an opening brief.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
